IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GEGARD MOUSASI,<br><br>        Plaintiff,<br><br>    v.<br><br>BELLATOR SPORT WORLDWIDE, LLC,<br>NEW BELLATOR, LLC, et al.,<br><br>        Defendants. | Case No. 2:24-cv-09844<br><br>Document electronically filed<br><br>**RETURN DATE: June 16, 2025** |

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S SHERMAN ACT CLAIM

DUANE MORRIS LLP

Eric R. Breslin
Sarah Fehm Stewart
200 Campus Drive, Suite 300
Florham Park, NJ 07932
Telephone: (973) 424-2063
erbreslin@duanemorris.com
sfstewart@duanemorris.com

Sean P. McConnell
30 S. 17th Street
Philadelphia, PA 19103
Telephone: (215) 979-1947
spmcconnell@duanemorris.com

*Attorneys for Defendants*

**TABLE OF CONTENTS**

                                                      **Page**

INTRODUCTION ............................................................................................................................1

ARGUMENT ...................................................................................................................................2

I.      PLAINTIFF FAILS TO PLEAD MONOPSONY POWER ................................................2

          A.      Plaintiff Does Not Plead Direct Evidence of Monopsony Power ........................... 2

          B.      Plaintiff Fails to Plead Circumstantial Evidence of Monopsony Power .................. 3

II.     PLAINTIFF HAS NOT PLED EXCLUSIONARY CONDUCT .........................................4

III.    PLAINTIFF HAS NOT PLED ANTITRUST STANDING ................................................6

CONCLUSION ................................................................................................................................7

# TABLE OF AUTHORITIES

**Cases**                                                                                                                   **Page**

*City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256 (3d Cir. 1998) ...................................... 6

*Deborah Heart & Lung Ctr. v. Virtua Health, Inc.*, 833 F.3d 399 (3d Cir. 2016) .......................... 2

*FTC v. Indiana Fed. of Dentists*, 476 U.S. 447 (1986) ................................................................. 4

*Hack v. President & Fellows of Yale Coll.*, 237 F.3d 81 (2d Cir. 2000) ......................................... 5

*Host Int'l, Inc. v. MarketPlace, PHL, LLC*, 32 F.4th 242 (3d Cir. 2022) ................................... 6-7

*LePage's Inc. v. 3M*, 324 F.3d 141 (3d Cir. 2002) ........................................................................ 4

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430 (3d Cir. 1997) ............................ 3, 5

*Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57 (3d Cir. 2010) ........................... 6

*SEI Glob. Servs., Inc. v. SS&C Advent*, 496 F. Supp. 3d 883 (E.D. Pa. 2020), *aff'd*, No. 20-3386, 2022 U.S. App. LEXIS 18121 (3d Cir. June 30, 2022) .............................................. 7

*Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320 (1961) ........................................................ 5

*Todd v. Exxon Corp.*, 275 F.3d 191 (2d Cir. 2001) ....................................................................... 3

*Toys "R" Us, Inc. v. FTC*, 221 F.3d 928 ....................................................................................... 4

*United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001) .................................................... 3

*W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85 (3d Cir. 2010) .............................. 2-5

*Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*, 549 U.S. 312 (2007) ...................... 4

*ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254 (3d Cir. 2012) ..................................................... 4

**Statutes**

Sherman Antitrust Act .......................................................................................... *Passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) .................................................................................................................. 7

Local Civil Rule 12.2 ..................................................................................................................... 7

## INTRODUCTION

Plaintiff Gegard Mousasi's ("*Plaintiff*") attempt to convert his contract dispute with his former promoters[1] into a Sherman Act Section 2 monopsonization claim fails for three independent reasons. *First*, the Promoter Defendants lack market power in a plausibly defined relevant market. *Second*, Plaintiff has failed to adequately allege that Promoter Defendants engaged in exclusionary conduct or otherwise harmed competition. *Third*, Plaintiff's alleged damages are entirely redressable by his breach of contract claim; therefore, he lacks antitrust standing to bring his Sherman Act claim.

Plaintiff's Opposition to the Motion to Dismiss for Failure to State an Antitrust Claim ([Doc. 35] hereinafter, the "*Opposition*") and the legal authorities cited therein confirm that the antitrust claim is entirely redundant of the alleged breach of contract. Plaintiff's sole basis that he adequately pled each necessary element of his antitrust claim is the allegations of performance (or non-performance) of the Agreement, *i.e.*, the so-called "handcuff-and-warehouse scheme." *Id.* at 11-14 (arguing it conveys market power); at 20-21 (arguing it constitutes exclusionary conduct); at 26-28 (arguing it constitutes antitrust injury)). But the "handcuff-and-warehouse scheme" relates only to the breach of contract claim and is insufficient as a matter of law to plead the necessary elements of a Sherman Act Section 2 claim. To conclude otherwise would be to allow any party to an exclusivity provision with buyer's remorse to sue under the antitrust laws.

---

[1] Defendants Bellator Sport Worldwide, LLC ("*Bellator*") and New Bellator, LLC ("*New Bellator*," a subsidiary of Professional Fighters League ("*PFL*")) (Bellator, New Bellator and PFL are collectively referred to as the "*Promoter Defendants*"). Plaintiff negotiated and agreed to several contracts with Bellator, and Bellator subsequently merged with PFL, which is referred to as New Bellator. (FAC ¶ 7).

# ARGUMENT

## I. PLAINTIFF FAILS TO PLEAD MONOPSONY POWER

Plaintiff has the burden of establishing that Promoter Defendants have "substantial monopsony power" in a relevant market. *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 103 (3d Cir. 2010). To plead substantial monopsony power, a plaintiff must either allege direct evidence of monopsony power, *i.e.*, that a dominant buyer actually suppressed wages and excluded rivals from a relevant market or must allege circumstantial evidence of monopsony power using market share and barriers to enter a plausible relevant market. *Id.* Plaintiff does neither, and the Opposition highlights the Amended Complaint's failure to plead any facts or economic analysis establishing that Promoter Defendants had monopsony power in any relevant market.

### A. Plaintiff Does Not Plead Direct Evidence of Monopsony Power

Direct evidence of monopsony power is actual control over wages and the actual exclusion of competition from a relevant market. *See Deborah Heart & Lung Ctr. v. Virtua Health, Inc.*, 833 F.3d 399, 404-05 (3d Cir. 2016) (rejecting Section 2 claim where "plaintiff show[ed] effects only on a small subset of that market and [made] no attempt to show broader effects."). Contrary to the assertion in the Opposition, the allegation that Promoter Defendants refused to schedule "***contracted*** bouts unless [Plaintiff] agreed to reduced compensation" (Opp. at 19 citing FAC ¶¶ 37-88) (emphasis added) is simply a complaint about contract performance and is insufficient evidence of control over wages or actual exclusion of rivals to be considered direct evidence of monopsony power in a relevant labor market. *Deborah*, 833 F.3d at 404-05.

2

### B. Plaintiff Fails to Plead Circumstantial Evidence of Monopsony Power

Even accepting Plaintiff's relevant market as adequately plead,[2] the Amended Complaint fails to allege any circumstantial evidence supporting Promoter Defendants having substantial monopsony power. Plaintiff's Opposition concedes that UFC is clearly the predominant promoter in the relevant market and that Promoter Defendants are a distant second. (Opp. at 4, 10). Assuming for the sake of argument that the market is a duopoly,[3] Promoter Defendants' approximate 20% market share is still insufficient as a matter of law to establish monopsony power. *W. Penn Allegheny Health Sys., Inc.*, 627 F.3d at 101, 104 (allegation that Highmark had 60%-80% market share and used that share to increase premiums and reduce output in the market for health insurance sufficient to allege anticompetitive effects). The cases cited in the Opposition underscore the deficiency. *See, e.g.*, *United States v. Microsoft Corp.*, 253 F.3d 34, 52 (D.C. Cir. 2001) (concluding that Microsoft had market power because it had 95% of the relevant market and

---

[2] Plaintiff's proposed relevant market is self-serving and arbitrary, and Plaintiff pleads no circumstantial evidence that Promoter Defendants exercised substantial monopsony power. Plaintiff has the burden at the pleading stage to allege a relevant market based on facts and basic economic analysis. *See Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436-37 (3d Cir. 1997). It cannot be based on the preferences of a particular plaintiff but on the reasonable interchangeability by consumers. *Id.* at 438. The Opposition attempts to justify a proposed labor market consisting of just Elite MMA fighters that earn at least $100,000 per bout in disparate regions like the U.S., the EU, the U.K., the United Arab Emirates, and Saudi Arabia predicated solely on his personal preferences. (Opp. at 4, 15; FAC ¶¶ 95, 110-21). This definition is arbitrary, self-serving and is unsupported by any objective facts or economic analysis. Therefore, Plaintiff's proposed market is legally insufficient, and the antitrust claim should be dismissed on this basis alone.

[3] The Opposition repeatedly refers to the market as a duopoly in an apparent attempt to overstate Promoter Defendants' market significance. (Opp. at 17). Because there are no allegations of any coordinated conduct between UFC and Promoter Defendants, it is inappropriate to repeatedly combine their respective market shares as a basis for claiming that Promoter Defendants have market power. *See Todd v. Exxon Corp.*, 275 F.3d 191, 195-97 (2d Cir. 2001) (aggregating market share to assess market power when defendants allegedly conspired together to harm the market). If anything, UFC's market power directly contradicts the plausibility that Promoter Defendants have monopsony power.

3

two well-developed barriers to entry); *Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*, 549 U.S. 312, 320-22 (2007) (finding that predominant buyer bidding up the market in a predatory bidding claim to force rivals to exit the market can show monopsony power); *FTC v. Indiana Fed. of Dentists*, 476 U.S. 447, 460-61 (1986) (finding a Section 1 violation because defendants "constituted heavy majorities of the practicing dentists" and "IFD dentists predominated" the market in which adverse effects on competition occurred); *Toys "R" Us, Inc. v. FTC*, 221 F.3d 928, 937 (finding Toys "R" to be the "giant" of the toy retailing industry that engaged in a conspiracy with largest toy manufacturers in a group boycott).[4]

## II. PLAINTIFF HAS NOT PLED EXCLUSIONARY CONDUCT

Another element to pleading a Section 2 claim is that Plaintiff must adequately plead that the defendant used its market power to engage in exclusionary conduct. *See, e.g.*, *LePage's Inc. v. 3M*, 324 F.3d 141, 158-59 (3d Cir. 2002). As to this pleading requirement, however, the Opposition points only to the "handcuff-and-warehouse" allegations regarding performance of the Agreement. The Amended Complaint fails to allege any predatory conduct, such as excluding rivals or foreclosing competition. *See id.*; *see also ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 271 (3d Cir. 2012) ("There is no set formula or evaluating the legality of an exclusive dealing agreement, but modern antitrust law generally requires a showing of significant market power by defendant, substantial foreclosure, contracts of sufficient duration to prevent meaningful competition by

---

[4] The allegation that "[s]ignificant barrier prevent new promotions from entering the market, including the difficulty of securing top talent, broadcast deals, and sponsorships" (FAC ¶ 138) is conclusory and insufficient to establish Promoter Defendants' market power. *W. Penn Allegheny Health*, 627 F.3d at 104 (relying on factual allegations of specific examples of entry barriers in combination with high market share in finding market power).

rivals, and an analysis of likely or actual anticompetitive effects.").[5] The Amended Complaint pleads no facts adequately alleging any of these elements.

In fact, the Third Circuit has affirmed dismissal of an antitrust claim involving similar allegations of "handcuffing." In *Queen City Pizza*, plaintiffs knew that Domino's Pizza had the right to direct franchisees to purchase particular ingredients under the franchise contract. 124 F.3d at 440. The court noted that plaintiffs had the opportunity to assess the risk that they would be overcharged on ingredients at the pre-contract stage when they considered whether to sign the franchise agreement. *Id.* This contractual power was not considered exclusionary conduct. *Id.*, *see also Hack v. President & Fellows of Yale Coll.*, 237 F.3d 81, 85 (2d Cir. 2000) (citing *Queen City Pizza* for the proposition that "[e]conomic power derived from contractual arrangements affecting a distinct class of consumers cannot serve as a basis for a monopolization claim."). Plaintiff does not plausibly allege that he was threatened or fraudulently induced into the Agreement. To the contrary, he had contracted with Promoter Defendants on multiple prior occasions.

The "warehousing" claims relate solely to performance of the Agreement. The Opposition argues that Promoter Defendants promised Plaintiff a certain number of bouts for a certain amount of compensation. Whether Promoter Defendants performed under the Agreement is entirely redressable under contract law and does not amount to exclusionary conduct under the antitrust laws. *Cf. West Penn Allegheny Health Sys., Inc.*, 627 F.3d at 109 (identifying allegations of defendant attempting to drive a rival out of the market by hiring away employees using bloated salaries, threatening a rival's customers, and making false statements about a rival's financial health, together, as adequately pleading exclusionary conduct).

---

[5] There are also no allegations that the exclusivity provision in the Agreement between Plaintiff and Promoter Defendants foreclosed a substantial share of any labor market under *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327 (1961).

5

There are simply no allegations that Bellator systematically foreclosed or excluded rivals from the market. In fact, there are no allegations of any harm to the broader market, just anecdotal instances of alleged breaches of contract in reference to other fighters. These allegations are insufficient to properly allege that the exclusivity provision in the Agreement constituted exclusionary conduct under the Sherman Act. *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 76 (3d Cir. 2010).

### III. PLAINTIFF HAS NOT PLED ANTITRUST STANDING

Plaintiff's lack of antitrust standing is an independent basis to dismiss Plaintiff's Section 2 claim. *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 264 (3d Cir. 1998). As with the other elements of Plaintiff's monopsonization claim, the Opposition identifies the "handcuff-and-warehouse scheme" as a basis for antitrust standing. It is not.

The most important element to pleading antitrust standing is pleading antitrust injury. The Amended Complaint fails to plead antitrust injury because it fails to plead injury to market-wide output or overall wages.[6] "It is well established that competition among businesses to serve as an exclusive supplier should be *encouraged*." *Race Tires*, 614 F.3d at 83 (emphasis in original). Plaintiff alleges that he could have signed with UFC, Bellator, PFL, or another promoter but repeatedly chose Bellator—that is the essence of competition. Any damages suffered by Plaintiff because of his decision to sign with Bellator, therefore, is not the type of injury that gives rise to antitrust claim. *Id.* at 84.

Plaintiff does not allege any harm to the competitive process itself or to conduct that reduces overall output or suppresses overall wages. The allegations that Plaintiff and other fighters

---

[6] The Amended Complaint fails to adequately allege the other factors for antitrust standing under Third Circuit. *See Host*, 32 at 249. The Opposition's reliance on only the contract dispute to conclude otherwise misapplies *Host*.

6

were unhappy with the bouts that they were offered (or not offered) or the compensation they were to receive for fighting in those bouts do not adequately plead antitrust injury. *See Host Int'l, Inc. v. MarketPlace, PHL, LLC*, 32 F.4th 242, 250-51 (3d Cir. 2022). Indeed, Plaintiff's alleged injuries are entirely redressable under contract law, and the same conduct cannot simultaneously constitute a breach of contract and an antitrust violation unless market-wide anticompetitive effects are alleged. *SEI Glob. Servs., Inc. v. SS&C Advent*, 496 F. Supp. 3d 883, 901 (E.D. Pa. 2020), *aff'd*, No. 20-3386, 2022 U.S. App. LEXIS 18121 (3d Cir. June 30, 2022). Accordingly, Plaintiff lacks antitrust standing, and the alleged monopsonization clam should be dismissed on that basis alone.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in Promoter Defendants' Opening Brief, Count Four[7] of Plaintiff's Amended Complaint, raising a claim under Section 2 of the Sherman Act, should be dismissed under Fed. R. Civ. P. 12(b)(6), with prejudice, for failure to state a claim upon which relief can be granted.

Dated: June 9, 2025

DUANE MORRIS LLP

By: /s/ Sarah Fehm Stewart
Eric R. Breslin
Sarah Fehm Stewart
200 Campus Drive, Suite 300
Florham Park, NJ 07932
Telephone: (973) 424-2063
erbreslin@duanemorris.com
sfstewart@duanemorris.com

---

[7] Pursuant to Local Civil Rule 12.2, Defendants will answer the remaining Counts of the Complaint within 14 days after entry of the Court's order resolving this Motion.

Sean P. McConnell
30 S. 17th Street
Philadelphia, PA 19103
Telephone: (215) 979-1947
spmcconnell@duanemorris.com

*Attorneys for Defendants*